IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES, | )<br>)<br>) |
| Plaintiff, | ) |
| v. | ) No. 15 C 8322 |
| RONALD MITCHELL, | ) Judge Virginia M. Kendall |
| Defendant. | )<br>)<br>)<br>)<br>) |

**MEMORANDUM OPINION AND ORDER**

Petitioner Ronald Mitchell moves pursuant to 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence. He pled guilty to distribution of heroin and possession of a firearm as a felon and is serving a sentence of 109 months imprisonment. Mitchell argues that his attorneys' representation during plea negotiations, sentencing, and post-conviction motions violated his Sixth Amendment right to effective assistance of counsel. Mitchell received a 9 year sentence when he was facing a sentence between 14 and over 17 years under the advisory guidelines for his heroin trafficking conviction. His original attorney negotiated a plea agreement that, not only reduced that sentence, but also required the Government to drop a Section 851 drug enhancement, without which he would have been facing a mandatory minimum of 10 years. In spite of this significant benefit, Mitchell attempted to withdraw his plea of guilty. The Court provided him with a second attorney and the motion was briefed. This Court denied the motion to withdraw the plea after finding that he voluntarily entered into it after receiving effective assistance of counsel. In that plea agreement, Mitchell waived his write to file a collateral attack like this one due to the significant benefit that he was receiving in the agreement. Now, once

1

again, he attempts to claim his attorney was ineffective in negotiating the plea and that his second attorney did not apprise him of all of his rights. Because the record reflects an appropriate level of representation which significantly benefitted Mitchell as opposed to prejudicing him, the Court denies his Section 2255 petition and also denies his motion for an evidentiary hearing. (Dkt. Nos. 1, 8.)

## BACKGROUND

On September 20, 2007, a grand jury charged Mitchell with one count of knowingly and intentionally possessing with intent to distribute 100 grams or more of heroin and one count of knowingly possessing a firearm as a convicted felon. (R. at 1.)[1] Mitchell's first attorney, Steven Greenberg, was retained by Mitchell and filed an appearance on April 9, 2012. (R. at 11.) Mitchell pled guilty to both counts of the Indictment on February 7, 2013. (R. at 32, 33.) On April 4, 2013, the Court granted Greenberg's motion to withdraw and appointed an attorney from the Federal Defender Program to represent Mitchell. (R. at 38.) The appointed attorney filed a motion to withdraw Mitchell's guilty plea on his behalf, which the Court ultimately denied. (R. at 49; *United States v. Mitchell*, 12 CR 150, 2013 WL 6839413 at *2-3 (N.D. Ill. Dec. 27, 2013). Thereafter, Mitchell filed several motions pro se despite having court-appointed representation, including a motion to reconsider the denial of his motion to withdraw the guilty plea. (R. at 63, 64, 65.) On March 25, 2014, Mitchell's attorney filed a motion clarifying that Mitchell no longer intended to withdraw his guilty plea. (R. at 73.) Mitchell appealed the Court's denial of his motion to withdraw the guilty plea, but voluntarily dismissed the appeal. (R. at 69, 77.) On September 9, 2014, the Court sentenced him to 109 months imprisonment as to both counts to run concurrently and four years of supervised release. (R. at 89.)

---

[1] Citations to Mitchell's criminal case (12 CR 150) are referred to as "R." followed by the docket number. Citations to this civil case are referred to as "Dkt. No." followed by the docket number.

## **LEGAL STANDARD**

Under *Strickland v. Washington*, a defendant's Sixth Amendment right to counsel is violated when (1) counsel's performance was deficient, meaning "counsel made errors so serious that counsel was not functioning as the counsel guaranteed the defendant by the Sixth Amendment"; and (2) counsel's deficient performance prejudiced the defendant such that but for the deficiency, there is a reasonable probability that the result of the proceedings would have been different. 466 U.S. 668, 687 (1984). As to the first prong, the "[C]ourt must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance" and presume that it is a "sound trial strategy." *Id.* at 689; *see Menzer v. United States*, 200 F.3d 1000, 1003 (7th Cir. 2000). A defendant must identify specific acts or omissions by counsel that constitute ineffective assistance, and the Court then considers whether they are outside the wide range of professionally competent assistance based on all the facts of the case. *See Menzer*, 200 F.3d at 1003. The Court must resist the urge to "Monday morning quarterback" by questioning counsel's decisions after the fact, but rather evaluate counsel's performance based on her perspective at the time. *See Harris v. Reed*, 894 F.2d 871, 877 (7th Cir. 1990); *Strickland*, 466 U.S. at 690. The strong presumption in favor of finding counsel's performance competent grants the greatest protection to "strategic choices made after thorough investigation of law and facts relevant to plausible options[.]" *Strickland*, 466 U.S. at 690.

The second Strickland prong requires the defendant to prove that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." *United States v. Starnes*, 14 F.3d 1207, 1210 (7th Cir. 1994) (quoting *United States v. Moralez*, 964 F.2d 677, 683 (7th Cir. 1992)). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. Where the

defendant has pled guilty, in order to satisfy the prejudice prong he "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). The defendant must specifically allege more than that he would have insisted on trial but also present objective evidence that he would not have pled guilty. *See Hutchings v. United States*, 618 F.3d 693, 697 (7th Cir. 2010); *Quintana v. Chandler*, 723 F.3d 849, 856 (7th Cir. 2013).

A petitioner in a Section 2255 action may move for an evidentiary hearing to explore the arguments asserted in her petition and "[i]f 'the files and records of the case conclusively show that the prisoner is entitled to no relief,' or if the allegations are too vague and conclusory, then an evidentiary hearing is unnecessary." *Torres-Chavez v. United States*, No 15-1353, 2016 WL 3632692 at *3 (7th Cir. July 7, 2016) (quoting 28 U.S.C. § 2255(b)). A petitioner's burden for obtaining an evidentiary hearing is "relatively light." *Id.* "Ineffective assistance claims generally require an evidentiary hearing if the record contains insufficient facts to explain counsel's actions as tactical." *Osagiede v. United States*, 543 F.3d 399, 412 (7th Cir. 2008). But an evidentiary hearing is not necessary if the record conclusively shows that the petitioner is not entitled to habeas relief. *See Almonacid v. United States*, 476 F.3d 518, 521 (7th Cir. 2007).

## **DISCUSSION**

### I.  Waiver of Collateral Attacks

Mitchell neglects to acknowledge that he waived his right to collaterally attack his sentence and conviction in his plea agreement. Mitchell's signed plea agreement states that "defendant also waives his right to challenge his conviction and sentence, and the manner in which the sentence was determined, and (in any case in which the term of imprisonment and fine are within the maximums provided by the statute) his attorney's alleged failure or refusal to file a

notice of appeal, in any collateral attack or future challenge, including but not limited to a motion brought under Title 28, United States Code, Section 2255. Mitchell entered into this plea due to the significant benefit of having the Government agree to drop the section 851 enhancement that would have required that he receive a ten year mandatory minimum sentence. (R. at 33, p. 15.)

"A defendant may certainly waive the right to appeal his conviction and sentence, as well as the ability to challenge either in a collateral attack." *Dowell v. United States*, 694 F.3d 898, 901 (7th Cir. 2012). To be valid, waiver of the right to collaterally attack a conviction and sentence "must be stated expressly." *United States v. Wilkozek*, 822 F.3d 364, 367 (7th Cir. 2016). "[A] voluntary and knowing waiver of an appeal is valid and must be enforced" except "when the sentence exceeds the statutory maximum, when the plea or court relies on a constitutionally impermissible factor like race, or when counsel is ineffective in the negotiation of the plea agreement." *Dowell*, 694 F.3d at 902. A petitioner can take advantage of the ineffective assistance of counsel exception to a waiver by claiming a Sixth Amendment violation in the negotiation of the plea agreement as a whole and need not challenge only the negotiation of the waiver portion. *See Hurlow v. United States*, 726 F.3d 958, 965 (7th Cir. 2013). Under this exception to a waiver, the petitioner "must allege that he entered the plea agreement based on advice of counsel that fell below constitutional standards. In other words, he must allege that the plea agreement was the product of ineffective assistance of counsel, or tainted by ineffective assistance of counsel[.]" *Id.* at 966-67 (internal citation omitted). Furthermore, like any contract, "for a waiver to apply, the disputed appeal or collateral attack must fall within the waiver's scope." *Dowell*, 694 F.3d at 902.

This Court has already determined that Mitchell "entered his plea voluntarily and knowingly" and nothing before the Court changes that conclusion nor does Mitchell argue to the

contrary. *Mitchell*, 2013 WL 6839413 at *2-3 (N.D. Ill. Dec. 27, 2013). Moreover, Mitchell's sentence does not exceed the statutory maximum and there is no evidence that the plea or the Court relied on an unconstitutional factor such as race. *See Dowell*, 898 at 901-02. Therefore, Mitchell waived the right to collaterally attack his conviction and sentence; he maintained solely the right to assert a claim for ineffective assistance of counsel as it pertained to the waiver of his right to appeal and file a motion for collateral attack.. . *See id*.

In spite of this explicit waiver, Mitchell asserts that his attorneys were constitutionally ineffective for failing to adequately communicate to him the terms and consequences of the plea agreement, failing to investigate before plea negotiations, failing to meet with him and appear in court after he plead guilty, submitting a "poorly-drawn motion" to withdraw his guilty plea, failing to file a reply in the briefing for the motion to withdraw his guilty plea, failing to object to the presentence report, and failing to conduct an evidentiary hearing at sentencing. In light of the scope of Mitchell's waiver, he waived his right to assert all of these claims. Yet, the Court will consider the alleged ineffective of counsel pertaining to the plea agreement and the plea negotiations. *See Dowell*, 898 at 902; *see also Hurlow*, 726 F.3d at 964 ("We have therefore repeatedly recognized that appellate and collateral review waivers cannot be invoked against claims that counsel was ineffective in the negotiation of the plea agreement."); *Keller v. United States*, 657 F.3d 675, 681 (7th Cir. 2011) (defendant cannot waive "ineffective assistance of counsel in connection with the negotiation of [the plea] agreement").

## II.    Ineffective Assistance of Counsel

Turning to Mitchell's only ineffective assistance of counsel claim that might survive the waiver of his collateral attack rights, Mitchell argues that Greenberg—who Mitchell retained and who represented him for a year until Greenberg had to withdraw because Mitchell wanted to file

6

a motion to withdraw his guilty plea—violated his Sixth Amendment rights with regards to his plea agreement. "In the ordinary case criminal defense attorneys have a duty to inform their clients of plea agreements proffered by the prosecution, and that failure to do so constitutes ineffective assistance of counsel…a defendant must be involved in the decision-making process regarding the agreement's ultimate acceptance or rejection." *United States v. Golden*, 102 F.3d 936, 943 (7th Cir. 1996) (quoting *Johnson v. Duckworth*, 793 F.2d 898, 902 (7th Cir. 1986)). In considering whether an attorney's advice during plea discussions constituted inadequate performance under *Strickland*, the Court does not "focu[s] not on whether [the attorney] offered advice or a guarantee, but rather on whether [his] advice was that of a reasonably competent defense lawyer." *Julian v. Bartley*, 495 F.3d 487, 496 (7th Cir. 2007). Plea bargaining is an "art" that the Court hesitates to structure with benchmarks of constitutionality on the part of a defense attorney because "alternative courses and tactics in negotiation are so individual that it may be neither prudent nor practicable to try to elaborate or define detailed standards for the proper discharge of defense counsel's participation in the process." *Missouri v. Frye*, 132 S.Ct. 1399, 1408 (2012).

Specifically, Mitchell alleges that Greenberg violated his Sixth Amendment rights because he allegedly:

> never communicated to Petitioner as to the progress of any potential plea agreement, and failed to truthfully consult with Petitioner as to the content of any proposed plea agreement. Defense counsel never indicated to Petitioner, a layman unversed in federal criminal law, the choices that he faced if he pleaded guilty versus going to trial. Defense counsel led Petitioner to believe on numerous occasions that he would receive six years for his crime. Defense counsel also failed to indicate in advance what drug quantity Petitioner would be pleading to, severely prejudicing him during the subsequent sentencing process. He was also never advised that the defense counsel had agreed with the Government that the applicable guidelines would be 168 to 210 months. Deprived of this critical information, and never advised of the likely sentence he would receive if he went to trial, Petitioner was several prejudiced.

7

(Dkt. No. 3 at 6.) The Government counters that Mitchell did not receive ineffective assistance of counsel during the plea negotiations because the record demonstrates that his attorney properly advised Mitchell during this period and ultimately negotiated a favorable plea agreement for him.

Mitchell does not contend that Greenberg failed to provide him the plea agreement or did not involve him in the acceptance of the plea agreement, which could raise serious constitutional concerns but still potentially not constitute deficient performance. *See Missouri*, 132 S.Ct. at 1408 ("[A]s a general rule, defense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused…When defense counsel allowed the offer to expire without advising the defendant or allowing him to consider it, defense counsel did not render the effective assistance the Constitution requires."); *Golden*, 102 F.3d at 943. Rather, Mitchell first argues that Greenberg did not keep him updated on the progress of the plea negotiations, failed to truthfully consult with him as to the content of the proposed plea agreement, and failed to inform him of his trial rights, the drug quantity in the plea agreement, and the sentencing guidelines applicable to his conviction pursuant. His claim that Greenberg did not keep him updated on the progress of the plea negotiations is within the wide range of professionally competent representation considering that plea offers are often in flux and waiting to apprise Mitchell of the status was likely a strategic decision. *See Menzer*, 200 F.3d at 1003. The remainder of Mitchell's claims are frivolous because the record disproves Mitchell's allegations. Mitchell took an oath to tell the truth during his change of plea hearing and stated the opposite of everything he asserts here in his petition. Mitchell also has failed to satisfy the prejudice prong of *Strickland* because he

received a lower sentence than the statutory minimum which would have been given as the floor of any sentence without the plea agreement. As the Court recounted in its previous order denying Mitchell's motion to withdraw his guilty plea, the record is replete with evidence of Mitchell's understanding of the plea agreement and also of his attorney's effectiveness as counsel during the negotiation of the plea agreement. *See Mitchell*, 2013 WL 6839413 at *1-2. At the plea colloquy on February 7, 2013, Mitchell was placed under oath and confirmed that Greenberg had provided him effective representation:

> THE COURT: Okay. Do you have -- have you been working by reviewing this plea agreement with Mr. Greenberg?
> MITCHELL: Have I been --
> THE COURT: Have you been working on reviewing the plea agreement with Mr. Greenberg --
> MITCHELL: Yes.
> THE COURT: -- prior to coming in today?
> MITCHELL: Yes, ma'am.
> THE COURT: Okay. Did you ask him questions about it?
> MITCHELL: Yes.
> THE COURT: And did he answer those questions for you?
> MITCHELL: Yes.
> THE COURT: Are you satisfied with his representation?
> MITCHELL: Yes.
> THE COURT: Okay. Did he talk to you about, for example, the sentencing guidelines?
> MITCHELL: Yes.

(Dkt. No. 48 at 3:14-4:5.) After this questioning, the Court concluded that Mitchell had "had enough time to review the document with [his] attorney" in reference to the plea agreement so that he could plead guilty, to which Mitchell did not object or ask for more time to confer with Greenberg. *Id.* at 6:2-3. The Court advised Mitchell of the maximum penalties that he would face at sentencing after pleading guilty:

> THE COURT: [L]et's go over the maximum penalties for the charge here. They are set forth in this plea agreement at page 5. And Count 1 carries a maximum sentence of 40 years in prison, a statutory minimum sentence of 5 years in prison, a term of probation, and a maximum fine of $2 million. You also understand that

9

> with respect to this count, I must impose a term of supervised release of at least 4 years and up to life, for example. Count 2 carries a maximum sentence of 10 years in prison, and a maximum fine of $250,000, and a term of supervised release of not more than 3 years. You also have a special assessment of $100. Therefore, your total potential sentence is 50 years in prison, a minimum sentence of 5 years in prison, a fine of $2,250,000, $200 in special assessments, and whatever period of supervised release that I impose on those counts. Do you understand that that's the maximum amount of time that you can be sentenced to?
> MITCHELL: Yes, ma'am.

*Id.* at 6:3-22. The Court then explained to Mitchell, in a step-by-step manner, the sentence he faced in light of the sentencing guidelines and the counts that he was pleading guilty to:

> THE COURT: Okay. Now, there's something called the sentencing guidelines as well. They're not mandatory anymore but they are advisory, but I am required to take them into account when I sentence you. Those are set forth starting on page 6 of your plea agreement, and the parties have been using the 2011 guideline book. They start with a base offense level of 34 pursuant to guideline 2D1.1(c)(2). And that's because the amount of cocaine that you are -- heroin, excuse me, that you are being held responsible for is at least 3 kilograms but less than 10 kilograms. You also possessed a firearm in connection with this offense, so you have a 2-level increase for Count 1. Count 2, the base offense level is 14, and that's because you were a prohibited person at the time of the offense, and that has a 4-level increase because you possessed the firearm in connection with another felony offense. What that means is that the multiple count adjustment brings you to a combined offense level of 36. You have acceptance of responsibility. That brings you down to 33. And you have a criminal history category of III, based upon 5 criminal history points and the -- the first one comes from January 2007 for a DUI in Cook County; and then the next point comes from the 2004 conviction for violation of the Illinois Liquor Act; and then two-- another point comes from your possession of a controlled substance in Cook County in '01; and then because you committed the offense while you were under supervision for one of those offenses, specifically the DUI, you get another 2 criminal history points. What that means is that the advisory range for you is 168 months to 210 months in prison. And of course that is separate and apart from the mandatory minimum sentence of 5 years. Do you understand that that is what you're exposed to for the advisory guideline range?
> MITCHELL: Yes, ma'am.

*Id.* at 6:23-8:10. At the conclusion of the plea colloquy the Court asked Mitchell, "Is anyone forcing you to do this today?" to which he replied, "No, ma'am." *Id.* at 12:14-15. In addition,

the plea agreement that Mitchell signed contains many of the same explanations provided by the Court at the plea colloquy.

The plea colloquy belies Mitchell's claims that he did not understand the contents of the plea agreement and that Greenberg did not explain the plea agreement to him. The colloquy served its purpose of providing Mitchell a "substantial opportunity to guard against" inadequate advice "by establishing at the plea entry proceeding that the defendant has been given proper advice or, if the advice received appears to have been inadequate, to remedy that deficiency before the plea is accepted and the conviction entered." *Frye*, 132 S.Ct. at 1406-07. In particular, the plea colloquy definitively demonstrates that Mitchell was aware of the penalty he faced at sentencing, the sentencing guidelines, and the charges that he was pleading guilty to. Both the plea colloquy and the plea agreement that Mitchell signed reflect that he understood the amount of heroin that he was pleading guilty to possessing with the intent to distribute. Furthermore, the Court described to Mitchell during the plea colloquy what would happen if he proceeded to trial and did not plead guilty, to which Mitchell responded that he understood his trial rights and that he was waiving them by pleading guilty. *Id.* at 9:14-10:24. In sum, the record establishes that Mitchell was not coerced into pleading guilty and was fully aware of his trial rights, the contents of the plea agreement, consequences of pleading guilty, sentencing guidelines, and drug quantity he pleaded guilty to possessing. Nothing suggests that Greenberg "grossly mischaracterize[d] the evidence" such that his performance could be considered deficient. *Torres-Chavez*, 2016 WL 3632692 at *3.

Next, Mitchell argues that he was coerced into agreeing to the plea agreement (something he denied under oath) based on Greenberg's false representations that he would be sentenced to only six years of imprisonment if he accepted the plea. Despite the fact that Mitchell

11

acknowledged several times that he was facing more than six years, even if it were the case that Greenberg represented to Mitchell that he would receive no more than six years of imprisonment, Mitchell had an opportunity to raise the argument that he received defective advice at the plea hearing, but chose not to, undermining his claim. *United States v. Stewart*, 198 F.3d 984 (7th Cir. 1999) proves instructive. In that case, the defendant argued that his plea was involuntary because his attorney coerced him into the plea by promising that the defendant would receive a maximum of sixty months in prison. *Id*. at 985. The Seventh Circuit rejected that argument because the defendant, similarly to the facts in this case, did not raise the issue at the plea hearing and in fact swore that no such advice had been given. *Id*. at 986 ("That advice, if given, would have been ineffective assistance of counsel, Stewart insists; and *whether* it was given is a question of fact that only a hearing can explore. The fundamental problem with this position is that Stewart has already had one opportunity to state, under oath and in the presence of the district judge, whether his attorney gave such defective advice. That opportunity was the plea hearing, and Stewart swore that no such advice had been given.") (emphasis in original). Here, Mitchell was given ample opportunity to raise any concerns that he believed he was being coerced into signing the plea agreement. In fact, Mitchell denied any coercion when the Court directly questioned him on the issue. (*See* Dkt. No. 48 at 3:14-4:5 ("Q. Is anyone forcing you to do this today? A. No, ma'am.") Moreover, even if Greenberg had given such advice – a question of fact that should have been addressed at the plea hearing, a representation that Mitchell would receive six years of imprisonment as a sentence when the Court ultimately sentenced him to nine years is not below the constitutional standard for performance because it was not a "gross mischaracterization of the sentencing consequences" of the plea agreement. *Bethel v. United States*, 458 F.3d 711, 717 (7th Cir. 2006).

Mitchell also argues that Greenberg's representation violated his Sixth Amendment rights because he failed to properly investigate the evidence or speak with potential witnesses prior to Mitchell pleading guilty. "[A] petitioner alleging that counsel's ineffectiveness was centered on a supposed failure to investigate has the burden of providing the court sufficiently precise information, that is, a comprehensive showing as to what the investigation would have produced." *Hardamon v. United States*, 319 F.3d 943, 951 (7th Cir. 2003) (quotation omitted). Here, although he alleges that Greenberg failed to investigate thoroughly, Mitchell does not state what specific issues Greenberg failed to investigate or what mitigating facts Greenberg would have found had he investigated. Mitchell also fails to satisfy his burden as he has produced nothing that his attorney would have discovered upon investigation or interviewing of witnesses. As such, he has not demonstrated bad performance by Greenberg. To the contrary, Mitchell, through signing his plea agreement, admits that he committed the crime with which he was charged. His admissions were also consistent with his statements throughout the prosecution, evidence obtained in the case, and his statement during the plea colloquy that he was responsible for trafficking between three and ten kilograms of heroin. Such sworn statements are binding and not subject to contradiction without a compelling reason. *See Stewart*, 198 F.3d at 987. Given the overwhelming evidence against Mitchell along with his admissions of guilt, Greenberg's emphasis on the plea agreement is reasonable, particularly as Mitchell has not identified any specific issues that Greenburg should have investigated. Overall, the evidence in the record shows that Mitchell was properly advised during the plea negotiation process and is devoid of anything suggesting that Greenberg provided ineffective assistance during this time period.

Nonetheless, even if Mitchell could prove that Greenberg's performance was deficient during the plea bargaining process (and he cannot), he fails to satisfy the prejudice prong under *Strickland*. Mitchell did not demonstrate that but for Greenberg's unconstitutional representation in advising him on the plea agreement, he would have gone to trial instead of pleading guilty. *See Hill*, 474 U.S. at 59. Mitchell purports to have been "severely prejudiced" because Greenberg did not apprise him of developments in the plea negotiations but does not explain how these updates would have affected his decision to plead guilty. Greenberg was not prepared for trial according to Mitchell, but again Mitchell fails to demonstrate how Greenberg's preparedness would have caused him to go to trial when no trial was scheduled at the time of the plea colloquy. Mitchell claims that Greenberg did not tell him the sentencing guidelines, drug quantity, and the details of a trial; but these were clearly and directly given to him by the Court in detail before he entered his plea, and he directly affirmed under oath that he had discussed them with his attorney. Stating now, for the purpose of obtaining collateral relief, the opposite of what he stated in court under oath constitutes "mere allegation[s] by the defendant that he would have insisted on going to trial" that are "insufficient to establish prejudice." *United States v. Cieslowski*, 410 F.3d 353, 359 (7th Cir. 2005); *see also Morales v. Boatwright*, 580 F.3d 653, 663 (7th Cir. 2009) ("There is absolutely no reason, beyond Morales's contention, to think that he would not have pleaded guilty even if we accept his contention that he did not fully understand the sentencing consequences of his plea."). These unsupported contentions do not come close to qualifying as objective evidence that he would not have pled guilty but for Greenberg's alleged errors. *See Hutchings*, 618 F.3d at 697; *Quintana*, 723 F.3d at 856 (7th Cir. 2013). In fact, the reality of a trial undercuts the likelihood that Mitchell would have passed on the plea agreement and proceeded to trial because if convicted at trial, he would have faced a ten-

year mandatory minimum under 21 U.S.C. § 851 since he had a prior drug conviction – and that would have been just the floor of any sentence to be imposed. Pursuant to the plea agreement the Government dismissed the Section 851 enhancement which reduced the mandatory minimum from ten years to five years. Considering that the Court sentenced Mitchell to less than ten years, he received a significant benefit from the plea agreement constituting a reasonable decision to lock in a sentence which he would never receive if convicted by a jury at trial. Mitchell fails to establish that his attorneys' representation violated his Constitutional rights and therefore his 2255 petition is denied.

### III. Motion for Evidentiary Hearing

Lastly, Mitchell seeks an evidentiary hearing to resolve any factual matters that arise from his 2255 petition. An evidentiary hearing about whether Greenberg's representation during the plea negotiations deprived Mitchell of his Sixth Amendment rights is unnecessary because he has not "alleged 'facts that, if proven, would entitle him to relief.'" *Gaylord v. United States*, No. 15-1297, 2016 WL 3741945 at *4 (7th Cir. 2016) (quoting *Bruce v. United States*, 256 F.3d 592, 597 (7th Cir. 2001)). Rather, his allegations are conclusory, disputed by the record, and do not warrant an evidentiary hearing. *See id.* ("Nor is a hearing required if the petitioner makes allegations that are vague, conclusory, or palpably incredible, rather than detailed and specific.") "[A] hearing is not required if the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." *Almonacid*, 476 F.3d at 521 (quotation omitted). Accordingly, the Court denies his motion for an evidentiary hearing.

### **CONCLUSION**

For the reasons provided above, the Court denies Mitchell's motion to vacate, set aside, or correct his sentence and denies his motion for an evidentiary hearing. (Dkt. Nos. 1, 8.)

15

Date: 9/26/2016

Virginia M. Kendall
U.S. District Court Judge